# Exhibit A

SUM-100

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

E-FILED
5/8/2025 3:40 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
25CV465457
Reviewed By: Y. Chavez
Envelope: 19284217

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

Xerox Corporation and Does 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

The Board of Trustees of the Leland Stanford Junior University

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

   You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

   There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

   *Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

   *Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

191 North First Street, San Jose, CA  95113

CASE NUMBER:
*(Número del Caso):*

25CV465457

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Christopher Berka, 3150 Porter Drive, Palo Alto, CA 94304-1212, 650.838.4300

DATE: 5/8/2025 3:40 PM    Clerk, by   Y. Chavez    , Deputy
*(Fecha)*    Clerk of Court   *(Secretario)*    *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario  Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[Print this form]  [Save this form]  [Clear this form]

CM-010

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*<br>Christopher P. Berka (SBN 94911)<br>PERKINS COIE LLP, 3150 Porter Drive, Palo Alto, CA  94304-1212 | *FOR COURT USE ONLY* |

TELEPHONE NO.: 650.838.4300    FAX NO.: 650.838.4350
EMAIL ADDRESS: CBerka@perkinscoie.com
ATTORNEY FOR *(Name):* The Board of Trustees of the Leland Stanford Junior University

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA**
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose, CA  95113
BRANCH NAME:

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 5/8/2025 3:40 PM
Reviewed By: Y. Chavez
Case #25CV465457
Envelope: 19284217**

CASE NAME:  The Board of Trustees of the Leland Stanford Junior University v.
Xerox Corporation, and DOES 1 through 10, inclusive

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: 25CV465457 |
|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000)   [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter   [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [x] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary b. [X] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify):* Four: Breach of Lease; Waste; Continuing Nuisance; Continuing Trespass
5. This case [ ] is [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date:  May 8, 2025

Christopher P. Berka                                      /s/ Christopher P. Berka
_____                    _____
(TYPE OR PRINT NAME)                               (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. January 1, 2024] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courts.ca.gov* |

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                    **CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*
**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
        Wrongful Death
Product Liability *(not asbestos or
    toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice–
        Physicians & Surgeons
    Other Professional Health Care
        Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip
        and fall)
    Intentional Bodily Injury/PD/WD
        (e.g., assault, vandalism)
    Intentional Infliction of
        Emotional Distress
    Negligent Infliction of
        Emotional Distress
    Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
    Practice (07)
Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
        *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease
        Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
        Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
        Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
    Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
    domain, landlord/tenant, or
    foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
        Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner
        Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
Confession of Judgment *(non-domestic
    relations)*
Sister State Judgment
Administrative Agency Award
    *(not unpaid taxes)*
Petition/Certification of Entry of
    Judgment on Unpaid Taxes
Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
        harassment)*
    Mechanics Lien
    Other Commercial Complaint
        Case *(non-tort/non-complex)*
    Other Civil Complaint
        *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
    Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

For your protection and privacy, please press the Clear
This Form button after you have printed the form.                 Print this form    Save this form         Clear this form

E-FILED
5/8/2025 3:40 PM
Clerk of Court
Superior Court of CA,
County of Santa Clara
25CV465457
Reviewed By: Y. Chavez

1 | PERKINS COIE LLP
Christopher P. Berka, Bar No. 94911
2 | CBerka@perkinscoie.com
Meredith R. Weinberg (SBN WA 45713) (*pro hac vice forthcoming*)
3 | MWeinberg@perkinscoie.com
Brendan S. Sasso, Bar No. 332134
4 | BSasso@perkinscoie.com
Bo Yan J. Moran, Bar No. 360429
5 | BMoran@perkinscoie.com
3150 Porter Drive
6 | Palo Alto, California 94304-1212
Telephone:     +1.650.838.4300
7 | Facsimile:     +1.650.838.4350

8 | Attorneys for Plaintiff THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR UNIVERSITY
9 |

10 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

11 | COUNTY OF SANTA CLARA

12 | 25CV465457

13 | THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR
14 | UNIVERSITY,

15 |           Plaintiff,

16 |       v.

17 | XEROX CORPORATION, and DOES 1-
10, inclusive,
18 |

19 |           Defendants.

Case No.

**COMPLAINT FOR:**

1. **Breach of Lease**
2. **Waste**
3. **Continuing Nuisance; and**
4. **Continuing Trespass**

**DEMAND FOR JURY TRIAL**

20 |

21 |      **GENERAL NATURE OF THE ACTION**

22 |      1.     Plaintiff The Board of Trustees of The Leland Stanford Junior University

23 | ("Stanford") leased real property to Defendant Xerox Corporation ("Xerox") between December

24 | 15, 1972 and December 15, 2023. Xerox agreed in the written lease, as consideration, to construct

25 | a building for Stanford and deliver the building and premises back to Stanford in good condition at

26 | the end of the lease term. Contrary to its promise, however, Xerox allowed the building and

27 | improvements to fall into disrepair and further caused the real property to become polluted with

28 |

toxic and hazardous chemicals. Xerox returned the real property back to Stanford in poor condition. By doing so, it breached the lease, committed waste, and created a continuing nuisance and trespass.

**THE LEASE**

2.      A true and correct copy of the lease between Stanford and Xerox is attached to this complaint as Exhibit A.

3.      The lease required Xerox to construct a building on the leased property. Ex. A § 4. Under the lease, the building immediately became owned by Stanford, with Xerox having only a leasehold interest in the building. *Id.* § 22. Xerox further agreed in the lease not to cause the "emanation or giving off" of waste products, *id.* § 3(e), to maintain the building and improvements in good repair, *id.* § 6(a)(i), to allow no nuisances on the property, *id.* § 6(a)(i), or commit waste, *id.* § 6(b), to comply with all laws, *id.* § 6(a)(ii), and to surrender the land, building, and improvements in "good order and condition" at the end of the lease term, *id.* § 19(b).

4.      The lease terminated on December 15, 2023.

**THE BUILDING**

5.      When the lease terminated, the property was not in the condition Xerox promised it would be. Among other things, the roof membrane and expansion joints were in poor condition, the landscaping was sparse and barren, railings were rusted, concrete was spalled, fractured, chipped, and pitted, pavement was cracked, and rooftop planters were leaking and in poor condition. These were the conditions found by Xerox's own consultants who inspected the building in 2021. Separate investigation by Stanford confirmed these defects and found others, including leakage in the underground sewer and storm drain lines, and windows whose sealant had failed. Xerox's consultant, and Stanford's, estimated that the cost of restoring the premises to good condition, as required by the lease, amounted to millions of dollars. Xerox knew about these conditions months before the lease expired, in sufficient time to restore the property to good condition, as required by the lease.  Xerox failed and refused, however, to do so.

**TOXIC POLLUTION**

6.      During the term of the lease, Xerox caused and allowed toxic and hazardous

chemicals to leak into the soil, contaminating the soil, soil vapor, and groundwater. Stanford hired consultants to investigate the nature and extent of the contamination several months before the lease terminated. Stanford gave the data it collected to Xerox and to the California Department of Toxic Substances Control (DTSC). As a result, DTSC wrote to Xerox on March 1, 2024, stating that the concentrations of trichloroethene (TCE), benzene, chloroform, and 1,3-butadienne at the site exceed human health risk screening levels, and that "additional investigation is warranted" and "necessary to protect public health." DTSC stated that if Xerox did not agree to conduct the necessary investigation, DTSC would issue an Imminent and Substantial Endangerment Determination and Order, and potentially issue penalties for each day of noncompliance. More than one year has passed. Xerox has still not investigated to determine the full nature and extent of the contamination. Nor has it cleaned up the toxic and hazardous chemicals, which continue to contaminate the site.

## PARTIES, JURISDICTION, AND VENUE

7.    Stanford has owned the property, which is located at 3333 Coyote Hill Road, Palo Alto, California, at all relevant times.

8.    Defendant Xerox is a New York corporation. It does significant business in California.

9.    The property is in Santa Clara County, California.

## THE BREACH WAS WILLFUL

10.    Xerox breached the lease. During the term of the lease, it emitted waste products onto the property, including toxic and hazardous chemicals. It did not maintain the building and improvements in good repair. It caused a nuisance, committed waste, and did not comply with all laws. It did not surrender the land, building, and improvements in good order and condition at the end of the lease term.

11.    Two years before the lease expired, in 2021, Xerox retained consultants, Merritt & Harris, to inspect and prepare a report on the condition of the building. Merrit & Harris found many conditions needing repair, including those identified in paragraph 5 of this complaint. Stanford

COMPLAINT
DEMAND FOR JURY TRIAL

1    asked Xerox to fix the problems.  Xerox, however, ignored the recommendations of Merritt &

2    Harris—and the requests by Stanford—and instead returned the property to Stanford with

3    knowledge that the building was not in the condition required by the lease.

4            12.    The breach of the lease was intentional and willful.

5            13.    During the term of the lease, Xerox used various hazardous substances, including

6    solvents, at the property.

7            14.    In February of 2023, consultants retained by Stanford performed a Phase I

8    environmental investigation, and in March and April of 2023, Stanford's consultants performed

9    additional investigation, including the collection of soil, soil vapor, and groundwater samples for

10   laboratory analysis.  Stanford's consultants reported that toxic and hazardous chemicals found on

11   the site exceed screening levels established by DTSC.

12           15.    Within days, Xerox was notified of these findings. Xerox responded by asking

13   Stanford to send field data, boring logs, well construction logs, and laboratory data packages

14   associated with Stanford's consultants' investigations. Stanford sent Xerox the requested

15   information, to the extent Stanford had it. On September 25, 2023, Stanford asked Xerox to disclose

16   its plans for remediating the contamination. On October 17, 2023, Xerox sent an email to Stanford

17   claiming the data did not "warrant action" by Xerox. Clearly, however, action was warranted, and

18   the problem could not be ignored. On March 1, 2024, therefore, DTSC sent the letter to Xerox,

19   cited above at paragraph 6 of this complaint, threatening to issue a cleanup order and issue penalties

20   to Xerox. More than a year has passed since DTSC sent the letter. Xerox has not taken steps to

21   remediate the pollution. The conduct by Xerox has been intentional and willful.

22                          **FIRST CAUSE OF ACTION AGAINST XEROX**

23                                    **BREACH OF LEASE**

24           16.    Stanford re-alleges and incorporates the allegations in paragraphs 1 through 15,

25   above.

26           17.     Xerox breached the lease it entered into with Stanford.

27           18.    As a result, Stanford has been harmed. The building and related structures were not

28

Case No.
                                                                    COMPLAINT
                                                            DEMAND FOR JURY TRIAL

1    in the condition promised, and the property was polluted with toxic and hazardous chemicals.

2    Stanford is entitled to damages, including the costs of restoring the building and premises to the

3    condition required by the lease.

4    **SECOND CAUSE OF ACTION AGAINST XEROX**

5    **WASTE**

6    19.    Stanford re-alleges and incorporates the allegations in paragraphs 1 through 18,

7    above.

8    20.    Between December 15, 1972 and December 15, 2023 Xerox had a leasehold interest

9    in the property, including the building.

10    21.    Stanford had a reasonable expectation that the property, including Stanford's

11    building, would be returned in good condition at the end of the lease term.

12    22.    The building and property were returned in an injured and depreciated condition.

13    The building and related improvements were damaged. The environment was contaminated with

14    toxic and hazardous substances.

15    23.    Xerox therefore committed waste.

16    24.    Stanford is entitled to recover damages for the waste, including treble damages

17    under Code of Civil Procedure Section 732.

18    **THIRD CAUSE OF ACTION AGAINST XEROX**

19    **CONTINUING NUISANCE**

20    25.    Stanford re-alleges and incorporates the allegations in paragraphs 1 through 24,

21    above.

22    26.    Xerox's actions and failures to act created conditions and permitted conditions to

23    exist that obstructed free use of, and interfered with, the comfortable enjoyment of the property.

24    27.    The conditions substantially interfered and continue to substantially interfere with

25    Stanford's use and enjoyment of the property and therefore constitute a nuisance under Civil Code

26    Sections 3479 and 3480, as well as common law.

27    28.    The hazardous substances released onto the property migrated and spread over

28

substantial portions of the property.

29.    The nuisance is reasonably abatable.

30.    Stanford did not consent to the conduct of Xerox that resulted in the nuisance.

31.    The harm to the property was serious, and Xerox's conduct provided no significant benefit in relation to the harm.

32.    Stanford has suffered harm resulting from the nuisance.

33.    Xerox's conduct was a substantial factor in causing the harm.

34.    Stanford is therefore entitled to recover damages for the harm caused by the nuisance.

## FOURTH CAUSE OF ACTION AGAINST XEROX

## CONTINUING TRESPASS

35.    Stanford re-alleges and incorporates the allegations in paragraphs 1 through 34, above.

36.    Intentional or negligent acts by Xerox, or both, were a substantial factor in causing hazardous substances to enter the property and remain on the property after the lease expired.

37.    Stanford did not give permission for the entry of the hazardous substances onto the property or for the substances to continue to remain on the property after the expiration of the lease.

38.    As a result of the continuing presence of the substances on the property after Xerox's leasehold interest terminated, Xerox has committed a continuing trespass.

39.    Stanford has been substantially harmed by the continuing trespass.

40.    The trespass is reasonably abatable. Xerox has failed and refuse to abate the trespass after being asked to do so by Stanford, the owner of the property.

41.    Under Civil Code Section 3334, the remedy for a continuing trespass includes the value of the use of the property for the time of the wrongful occupation, as well as the reasonable cost to repair or restore the property to its original condition, and the costs of recovering possession. The value of the use of the property is, pursuant to Section 3334, the greater of the reasonable rental value of the property or the benefits obtained by the person wrongfully occupying the property by

reason of the wrongful occupation. Stanford is entitled to recover all available damages, including remedies available under Section 3334.

## PRAYER FOR RELIEF

Stanford seeks judgment against Xerox as follows:

a.  Damages for breach of lease, waste, continuing nuisance, and continuing trespass, in the amount of Twelve Million Three Hundred Twelve Thousand Five Hundred Forty-Four and 15/100 Dollars ($12,312,544.15), before trebling under Code of Civil Procedure Section 732, or such other amount as determined during the course of this case;

b.  Treble damages for waste under Code of Civil Procedure Section 732;

c.  All available remedies for continuing trespass under Civil Code Section 3334;

d.  Injunctive relief compelling Xerox to comply with the lease by abating the toxic and hazardous substances on the site;

e.  Declaratory relief under Code of Civil Procedure Section 1060 establishing Xerox's obligations arising from the 1) breach of the lease, 2) waste, 3) continuing nuisance, and 4) continuing trespass.

f.  Litigation expenses, including attorneys' fees and expert fees, under Health and Safety Code Section 25395.84;

g.  Attorneys' fees pursuant to Section 21 of the lease;

h.  Pre- and post-judgment interest;

i.  Costs of suit; and

j.  Such other and further relief the Court deems appropriate.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

1

DATED:  May 8, 2025                    **PERKINS COIE LLP**

2

3                                       By:/s/ Christopher P. Berka
                                           Christopher P. Berka
4                                          Meredith R. Weinberg (*pro hac vice* forthcoming)
                                           Brendan S. Sasso
5                                          Bo Yan J. Moran

6                                       Attorneys for Plaintiff THE BOARD OF TRUSTEES
                                        OF THE LELAND STANFORD JUNIOR
7                                       UNIVERSITY

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No.
                                                             COMPLAINT
                                                             DEMAND FOR JURY TRIAL

# EXHIBIT A

L E A S E

THIS LEASE, made and entered into as of the __15th__ day of ___September___, 19_72_, by and between THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, a body having corporate powers under the laws of the State of California, hereinafter referred to as "Lessor", and

XEROX CORPORATION

a __New York__ corporation, hereinafter referred to as "Lessee",

W I T N E S S E T H :

WHEREAS, Lessor is the owner of the hereinafter described property located in the County of Santa Clara, State of California, which Lessee is desirous of leasing;

NOW, THEREFORE, it is mutually agreed by and between the parties as follows:

1.    Description of Property and Term.

For and in consideration of the rent prescribed herein and of the faithful performance by Lessee of the other terms, covenants, agreements and conditions herein contained on the part of Lessee to be kept and performed, Lessor hereby leases unto Lessee and Lessee does hereby hire from Lessor that certain parcel of land being a portion of the lands of The Leland Stanford Junior University located within the boundaries of the County of Santa Clara, State of California, and more particularly described on Exhibit A, attached hereto and by this reference made a part hereof.

The term of this lease shall be __fifty-one__ (_51_) years. commencing ___December 15,___ 19_72_, and terminating ___December 15___, _2023_.

2. <u>Rent</u>.

(a)  As initial rental for the term of this lease, Lessee has paid to Lessor concurrently with the execution of this instrument the sum of __Six Hundred Nine Thousand Four Hundred Eighty Two__ ------------------------------------------- Dollars ($ 609,482.00_____ ), receipt whereof is hereby acknowledged by Lessor.  In addition to said initial rental, as part of the consideration for this lease and as additional rent hereunder, Lessee covenants and agrees to bear, pay and discharge promptly as the same become due and before delinquency all taxes, assessments, rates, charges, license fees, municipal liens, levies, excises or imposts, whether general or special, or ordinary or extraordinary, of every name, nature and kind whatsoever, including all governmental charges of whatsoever name, nature or kind which may be levied, assessed, charged or imposed or may be or become a lien or charge upon the property hereby leased or any part thereof or upon any of the buildings or improvements upon the leased premises or upon the leasehold of Lessee or upon the estate hereby created or upon Lessor by reason of its ownership of the fee underlying this lease, during the term of this lease.  Nothing herein contained shall be construed to require Lessee to pay (i) any franchise, gift, estate, inheritance, succession, capital stock, capital levy or transfer tax of Lessor growing out of or connected with this lease or Lessor's rights in the leased premises, or (ii) any income, excess profits or revenue tax, or any other tax, charge or levy against Lessor or upon either the rentals provided for herein or Lessor's right to receive such rentals, or (iii) any personal property tax of Lessor; provided, however, that if at any time during the term of this lease, under the laws of the State of California or any political subdivision thereof, any tax is levied or assessed against Lessor directly in substitution in whole or in part for real property taxes, Lessee covenants and agrees to pay and discharge such tax, but only to the extent that it can be

ascertained that there has been such a substitution and that Lessee has been relieved from the payment in whole or in part of real property taxes.

(b)  All of the aforesaid taxes, assessments, charges, imposts and levies of whatsoever nature, (except those, if any, payable by Lessor,) which shall relate to a fiscal year during which the term of this lease shall commence or terminate shall be prorated between Lessor and Lessee.

(c)  Lessee shall obtain and deliver to Lessor receipts or duplicate receipts for all taxes, assessments, charges and other items required to be paid by Lessee promptly upon the payment thereof.

(d)  If at any time during the term of this lease any governmental subdivision shall undertake to create an improvement or special assessment district the proposed boundaries of which shall include the leased premises, Lessee shall be entitled to appear in any proceeding relating thereto and to exercise all rights of a landowner to have the leased premises excluded from such district or to determine the degree of benefit to the leased premises resulting therefrom.  However, Lessor retains to itself an independent right, but shall be under no obligation, to appear in any such proceeding for the purpose of seeking inclusion of the leased premises in, or exclusion of the leased premises from, any such district or of determining the degree of benefit therefrom to the leased premises.  The party receiving any notice or other information relating to the proposed creation of any such district, the proposed boundaries of which include the leased premises, shall promptly advise the other party in writing of such receipt. If any tax, assessment, charge, levy or impost made against the leased premises to finance such a special improvement shall be payable in installments over a period of time extending beyond the term of this lease, Lessee shall only be required to pay such installments thereof as shall become due and payable during the term of this lease.

3. <u>Use</u>.

Lessee presently intends that the leased premises will be used for research, development and limited manufacturing.

In no event, however, shall the leased premises be used

(a)  for any purpose or use not at the time permitted by the then applicable zoning law or ordinance;

(b)  for any purpose or use prohibited or not permitted in LM-5 (Limited Manufacturing-5) Districts on December 1, 1965 or on the date hereof under the zoning ordinance of the City of Palo Alto, State of California, being Ordinance No. 1324 adopted February 19, 1951, (as amended), as said Ordinance existed on December 1, 1965 or on the date hereof, as the case may be, or for any purpose or use permitted on December 1, 1965 or on the date hereof in such LM-5 Districts only after securing a use permit or a variance or an exception;

(c)  for the principal or primary purpose of operating or maintaining professional, administrative, business or other offices thereon except in connection with and in support of the conduct on the leased premises of research, development, light manufacturing or warehousing not otherwise prohibited by the provisions of this paragraph 3;

(d)  for any of the following specific purposes:

(1)  the manufacture, warehousing, commercial storing, sale or any other dealing in spirituous, vinous, malt or intoxicating or alcoholic beverages of any kind;

(2)  theaters or places of amusement or entertainment, including, without limiting the generality of the foregoing, music or dance studios;

(3)  sanitariums;

(4)  mortuaries;

(5)  keeping or raising of animals or fowl, except in reasonable numbers for laboratory experimental purposes;

4.

shall any activity be carried on upon the leased premises

(e)  which results in the emanation or giving off of offensive gas, smoke, fumes, dust, odors, waste products, noise or vibrations;

(f)  which in any manner causes, creates or results in a nuisance;

(g)  which is of a nature that it involves substantial hazard, such as the manufacture or use of explosives, chemicals or products that may explode and the like, provided that Lessee may use commercial gases and chemicals such as natural gas, hydrogen, acetylene, gasoline and the like in quantities and in the manner generally approved in industries not prohibited under the preceding subparagraphs of this paragraph 3.

So long as Lessee is not in default hereunder it may hold vacant any buildings or improvements on the leased premises.

4.  <u>Construction of Improvements</u>.

Lessee is hereby granted permission and agrees and covenants, at its own sole cost and expense, to construct upon the leased premises improvements and to develop the surrounding grounds in or substantially in accordance with general plans and specifications approved in writing by Lessor concurrently with execution of this lease.  Lessee shall commence such construction within ____three_____ ( _3_ ) months from the date of the commencement of the term hereof and diligently prosecute to completion such construction.

5.  <u>Additional Buildings and Improvements</u>.

Lessee shall have the right after the construction of the improvements provided for in paragraph 4 hereof and during the term of this lease to construct additional buildings or improvements on the leased premises or to make alterations or additions to existing buildings and improvements, including adding a story thereto (but no building on the leased premises shall exceed thirty-five (35) feet in height or have more than two (2) stories above ground), provided, however, that if any project involves the construction of an additional building or structure or a material alteration of exterior design of any existing building

4-a.

or structure, Lessee shall in each such case first submit the
general plans and specifications therefor to Lessor, and Lessor
shall have thirty (30) days thereafter within which to notify
Lessee in writing that it disapproves said plans and specifica-
tions because (a) the proposed exterior construction or altera-
tion or improvement or landscaping is deemed to be inappropriate
in design or engineering construction or (b) the proposed off-
street parking area is deemed to be inadequate, and, if such notice
is so given, Lessor shall specify in what respects such construction
or alteration or improvement or landscaping is so deemed to be
inappropriate or such proposed off-street parking area is so deemed
to be inadequate, and Lessee shall not proceed with construction
until the objection of Lessor is remedied, but, unless such notice
of disapproval is so given, or if Lessor gives its earlier approval
in writing of said plans and specifications, Lessee may proceed
with construction.  Lessor agrees that it will not unreasonably
withhold its approval hereunder.

      6.   <u>Repairs, Governmental Regulations,
         Waste, Advertising</u>.

      (a)  Lessee shall, during the term of this lease,
at its own cost and expense, and without any cost or expense to
Lessor:

         (i)  Keep and maintain all buildings and
improvements which may be erected on the leased premises, and all
appurtenances thereto, in good and neat order and repair and shall
allow no nuisances to exist or be maintained therein.  Lessee
shall likewise keep and maintain the grounds, sidewalks, roads
and parking and landscaped areas in good and neat order and repair
and in substantial conformity with said plans and specifications.
Lessor shall not be obligated to make any repairs, replacements or
renewals of any kind, nature or description whatsoever to the
leased premises or any buildings or improvements thereon, and
Lessee hereby expressly waives all right to make repairs at Lessor's
expense under Sections 1941 and 1942 of the California Civil Code; and

(ii)   Comply and abide by all federal, state, county, municipal and other governmental statutes, ordinances, laws and regulations affecting the leased premises, the improvements thereon or any activity or condition on or in the leased premises.

(b)   Lessee agrees that it will not commit or permit waste upon the leased premises other than to the extent necessary for the removal of any buildings or improvements upon the leased premises for the purpose of constructing and erecting other buildings and improvements thereon.  Lessee agrees that it will not remove, or cause or authorize any other person to remove, any dirt, earth, rocks, gravel or the like from the leased premises except upon the written instruction of Lessor as to where the same may be deposited at Lessee's expense; if, however, Lessor within thirty (30) days after written request by Lessee for designation by Lessor of a site where the same may be deposited, shall fail to designate such a site within a three (3) mile radius of the leased premises, Lessee shall be free to deposit the same at such place, other than upon any land owned by Lessor, as Lessee may select; provided, however, that in no event shall any dirt, earth, rocks, gravel or the like be removed from the leased premises except as required in connection with the construction of buildings and improvements thereon.  Lessee agrees that it will not damage, cut down or remove, or cause or authorize any other person to damage, cut down or remove, any tree from the leased premises without the prior written consent of Lessor.

(c)   Lessee agrees that without having first obtained the consent in writing of Lessor, Lessee will not place or maintain or authorize or permit any other person to place or maintain any sign or advertisement

(i)   upon the roof, any window or any exterior wall of any building or structure upon the leased premises, or

(ii)   upon any portion of, or at any point in,

6.

any building or structure upon the leased premises from which such
sign can be seen from any point not on the leased premises, or

(iii) upon the grounds of the leased premises.
Lessor agrees that it will not unreasonably withhold such consent
to any sign of reasonable size placed upon a building or structure
which only sets forth the name of Lessee and an appropriate legend
identifying the particular building or structure.

(d) In the event that at any time prior to expira-
tion of the term of this lease there shall be a partial or total
destruction of the buildings and improvements on the leased prem-
ises from any cause, Lessee shall either:

(i) Diligently restore and rehabilitate said
buildings and improvements to a value equal to or exceeding the value
of the buildings or improvements destroyed, Lessee to be entitled to
pay the cost of such restoration and rehabilitation out of any
proceeds received from insurance, and to retain any such proceeds in
excess of the cost of such restoration and rehabilitation, or

(ii) Within one hundred eighty (180) days
after such destruction notify Lessor of its election to terminate
this lease and surrender the leased premises to Lessor, in which
event Lessee shall (A) promptly remove all buildings and improve-
ments from the leased premises, (B) diligently restore the land as
nearly as possible to the condition existing prior to construction
of said buildings and improvements, (C) make, execute, acknowledge
and deliver to Lessor a deed in form satisfactory to Lessor con-
veying unto Lessor all right, title and interest herein conveyed
to Lessee in and to the leased premises, and (D) thereupon redeliver
the land to Lessor in a neat and clean condition.  Lessee shall be
entitled to pay the cost of such restoration of the land out of
any proceeds received from insurance; the balance of such proceeds
shall be divided between Lessor and Lessee as follows:  One and
ninety-seven one hundredths per cent (1.97%) thereof shall be paid
to Lessor for each year or fractional year which shall have expired
after the date of execution of this lease, and the remainder of

7.

such proceeds shall be paid to Lessee.  Termination of this lease
in the manner authorized by this subparagraph 6(d)(ii) shall become
effective only upon compliance with the foregoing provisions of
this subparagraph 6(d)(ii).  Notwithstanding any such termination,
Lessee shall fully perform any obligation under this lease (except
the obligation of restoration and rehabilitation of said buildings
and improvements) relating to an event occurring or circumstance
existing prior to the date of termination of this lease, including
the payment of any taxes, assessments or charges which Lessee is
obligated to pay under paragraph 2 hereof and which may be a lien
upon the leased premises at the date of termination.

      7.   <u>Public Utilities</u>.

All water, gas, electricity or other public utilities
used upon or furnished to the leased premises during the term
hereof shall be paid for by Lessee, and all service lines of such
utilities shall be installed beneath the surface of the leased
premises and connected to existing public utilities at no cost or
expense to Lessor.

      8.   <u>Extensions of Time</u>.

The time during which Lessee is actually and necessarily
delayed in (a) commencing or completing the construction of the
building described in paragraph 4 hereof, (b) in restoring any
buildings or improvements, or (c) in making repairs by any of the
following:  Lack of required approval by Lessor, fire, earthquake,
acts of God, the elements, war or civil disturbance, strikes or
other labor disturbances, economic controls making it impossible
to obtain the necessary labor or materials, or other matters or
conditions beyond the control of Lessee, shall be excluded in
determining the time for commencing or completing the work, as the
case may be, but, except for such delay, Lessee shall in all cases
proceed promptly (or within the period specified by the applicable
provisions of this lease, as the case may be,) with the commence-
ment of the work and shall diligently carry such work to completion.

8.

9.    Mechanics' and Other Liens.

(a)  Lessee covenants and agrees to keep all of the leased premises and every part thereof and all buildings and other improvements thereon free and clear of and from any and all mechanics', materialmen's and other liens for work or labor done, services performed, materials, appliances, teams or power contributed, used or furnished to be used in or about the leased premises for or in connection with any operations of Lessee, any alteration, improvement or repairs or additions which Lessee may make or permit or cause to be made, or any work or construction, by, for or permitted by Lessee on or about the leased premises, and at all times promptly and fully to pay and discharge any and all claims upon which any such lien may or could be based, and to save and hold Lessor and all of the leased premises and all buildings and improvements thereon free and harmless of and from any and all such liens and claims of liens and suits or other proceedings pertaining thereto.  Lessee covenants and agrees to give Lessor written notice not less than ten (10) days in advance of the commencement of any construction, alteration, addition, improvement or repair costing in excess of Five Thousand Dollars ($5,000) in order that Lessor may post appropriate notices of Lessor's non-responsibility.  Lessee further agrees that if so requested by Lessor it will obtain, at its sole expense, a corporate surety bond payable to Lessor sufficient to protect the leased premises against any mechanics', materialmen's or other liens of the type hereinbefore described in this subparagraph 9(a).

(b)  No mechanics' or materialmen's liens or mortgages, deeds of trust, or other liens of any character whatsoever created or suffered by Lessee shall in any way, or to any extent, affect the interest or rights of Lessor in any buildings or other improvements on the leased premises, or attach to or affect its title to or rights in the leased premises.

10.  Indemnity.

(a)  If Lessee desires to contest any lien of the

9.

nature set forth in subparagraph 9(a) hereof, or if Lessee desires to contest any tax, assessment, charge or other item to be paid by it under paragraph 2 hereof, it shall notify Lessor of its intention so to do within ten (10) days after the filing of such lien or at least ten (10) days prior to the delinquency of such tax, assessment, charge or other item, as the case may be. In either such case Lessee shall not be in default hereunder, and Lessor shall not satisfy and discharge such lien nor pay such tax, assessment, charge or other item, as the case may be, until five (5) days after the final determination of the validity thereof, within which time Lessee shall satisfy and discharge such lien or pay and discharge such tax, assessment, charge or other item to the extent held valid, and all penalties, interest and costs in connection therewith, as the case may be; but the satisfaction and discharge of any such lien shall not, in any case, be delayed until execution is had upon any judgment rendered thereon, nor shall the payment of any such tax, assessment, charge or other item, together with penalties, interest and costs, in any case be delayed until sale is made of the whole or any part of the leased premises on account thereof, and any such delay shall be a default of Lessee hereunder. In the event of any such contest, Lessee shall protect and indemnify Lessor against all loss, cost, expense and damage resulting therefrom and, upon notice from Lessor so to do, shall furnish Lessor a corporate surety bond payable to Lessor, in double the amount of the lien, tax, assessment, charge or item contested, as the case may be, conditioned that Lessee shall satisfy and discharge such lien or pay such tax, assessment, charge or other item and all penalties, interest and costs in connection therewith, and shall protect and indemnify Lessor as herein required.

(b) Lessee covenants and agrees that Lessor shall not at any time or to any extent whatsoever be liable, responsible or in anywise accountable for any loss, injury, death or damage to persons or property which at any time may be suffered or sustained

by Lessee or by any person whosoever may at any time be using or occupying or visiting the leased premises or be in, on or about the same, whether such loss, injury, death or damage shall be caused by or in anywise result from or arise out of any act, omission or negligence of Lessee or of any occupant, subtenant, visitor or user of any portion of the leased premises, or shall result from or be caused by any other matter or thing whether of the same kind as or of a different kind than the matters or things above set forth, except those arising by reason of the negligence or willful act of Lessor, its agents or employees, and Lessee shall forever indemnify, defend, hold and save Lessor free and harmless of, from and against any and all claims, liability, loss or damage whatsoever on account of any such loss, injury, death or damage, except those arising by reason of the negligence or willful act of Lessor, its agents or employees. Lessee hereby waives all claims against Lessor for damages to the buildings and improvements that are hereafter placed or built upon the leased premises and to the property of Lessee in, upon or about the leased premises, and for injuries to persons or property in or about the leased premises, from any cause arising at any time, except those arising by reason of the negligence or willful act of Lessor, its agents or employees.

    11.  <u>Insurance</u>.

      (a)  <u>Fire, Extended Coverage and War Damage</u>.

        (i)  Lessee shall, at its sole expense, obtain and keep in force during the term hereof fire and extended coverage insurance on all buildings and improvements that are hereafter placed or built upon the leased premises. The amount of such insurance shall be not less than ninety per cent (90%) of the full insurable value of said buildings and improvements. Lessee hereby waives as against Lessor any and all claims and demands, of whatsoever nature, for damages, loss or injury to the buildings and improvements that are hereafter placed or built upon the leased premises and to the property of Lessee in, upon or about the

leased premises which shall be caused by or result from fire and/or
other perils, events or happenings which are the subject of extended
coverage insurance.  Lessee further agrees that each such policy
of fire and extended coverage insurance and all other policies of
insurance on the leased premises and/or on the property of Lessee
in, upon or about the leased premises, including, without in any
way limiting the generality of the foregoing, business interruption
insurance, which shall be obtained by Lessee, whether required by
the provisions of this lease or not, shall be made expressly sub-
ject to the provisions of this subparagraph 11(a) and that Lessee's
insurers hereunder shall waive any right of subrogation against
Lessor.

      (ii)  The said "full insurable value" shall be
determined at the time the fire and extended coverage insurance is
initially taken out, and Lessee shall promptly notify Lessor in
writing of such determination, provided that Lessor or Lessee may
at any time (but not more frequently than once in every twelve (12)
calendar months), by written notice to the other, require the full
insurable value of said buildings and improvements to be redeter-
mined, whereupon such redetermination shall be made promptly and
each party promptly notified in writing of the results thereof.

      (b)  Other Insurance.

    During the term of this lease Lessee shall procure
and maintain in full force and effect (i) bodily injury liability
insurance with limits of not less than Five Hundred Thousand
Dollars ($500,000) per person and One Million Dollars ($1,000,000)

12.

per occurrence insuring against any and all liability of Lessee with respect to the leased premises or arising out of the maintenance, use or occupancy thereof, (ii) property damage liability insurance with a limit of not less than One Hundred Thousand Dollars ($100,000) per accident, and (iii) insurance on all boilers and other pressure vessels, whether fired or unfired, located in the leased premises in the sum of not less than One Hundred Thousand Dollars ($100,000). All of such insurance shall insure (to the extent of the aforesaid limits, subject, however, to such changes in said limits as may be made from time to time in accordance with the provisions of this subparagraph 11(b)) the performance by Lessee of the indemnity agreement as to liability for injury to or death of persons and injury or damage to property in subparagraph 10(b) contained. In the event that either party shall at any time deem the limits of any of such insurance then carried to be either excessive or insufficient, the parties shall endeavor to agree upon the proper and reasonable limits for such insurance then to be carried. If the parties shall be unable to agree thereon, the proper and reasonable limits for such insurance then to be carried shall be determined by an impartial third person selected by the parties or, should they be unable to agree upon a selection, by an impartial third person chosen by the Presiding Judge of the Superior Court of the County of Santa Clara, acting in his individual and not his judicial capacity, upon application by either party made after five (5) days' written notice to the other party of the time and place of such application, and the decision of such impartial third person as to such limits then to be carried shall be binding upon the parties. Such insurance shall be carried with the limits as thus agreed upon or determined until such limits shall again be changed pursuant to the provisions of this subparagraph. The expenses of such determination shall be borne equally between Lessor and Lessee.

13.

(c)  Policy Form.

All of the insurance provided for under this paragraph 11 and all renewals thereof and the bonds provided for in subparagraphs 9(a) and 10(a) hereof shall be issued by such good, responsible and standard companies and in such form and substance as are approved by Lessor.  The policies of insurance provided for in subparagraph 11(a) hereof shall be payable to Lessor and Lessee as their interests may appear and any loss adjustment shall require the written consent of both Lessor and Lessee.  All insurance under subparagraph 11(b) shall be carried in the joint names of Lessor and Lessee.  All policies provided for in paragraph 11 hereof shall expressly provide that the policy shall not be cancelled or altered without thirty (30) days' prior written notice to Lessor.  Upon the issuance thereof, each such policy or a duplicate or certificate thereof shall be delivered to Lessor for retention by it.

12.  Termination of Lease as to Excess Property.

In the event at any time during the term of this lease Lessee shall determine that the leased premises (or any portion thereof) upon which Lessee has not constructed improvements of a substantial nature are not required for use and occupancy by Lessee, Lessee shall so notify Lessor in writing, describing by metes and bounds the excess property, and Lessor shall thereupon have the right to terminate this lease as to said property so described upon payment to Lessee of an amount equal to the lump sum fair rental value of said property for a term commencing on the date of such notice by Lessee and terminating upon the date of termination of this lease specified in paragraph 1 hereof.  If Lessor shall desire to exercise said right, it shall so notify Lessee within one hundred twenty (120) days after such notice by Lessee, the date of such notice by Lessor being hereinafter referred to as the "notice date".  Thereupon Lessor and Lessee shall forthwith attempt to agree upon said lump sum fair rental value.  In the event the

parties have not agreed upon said lump sum fair rental value within
sixty (60) days subsequent to the notice date, the determination
shall, upon fifteen (15) days' written notice from one party hereto
to the other, be made by three third persons, one to be appointed
by Lessor, one by Lessee, and the third an impartial person appointed
by said two persons so appointed, and the three shall proceed forthwith
to determine said lump sum fair rental value and shall render their
decision in writing to Lessor and Lessee within one hundred twenty
(120) days after the notice date; but if said two persons so ap-
pointed by Lessor and Lessee, respectively, are unable to agree
upon said third person within ninety (90) days after the notice
date, said third impartial person shall be appointed by the
Presiding Judge of the Superior Court of the County of Santa Clara,
acting in his individual and not his judicial capacity, upon
application by either party hereto made after five (5) days'
written notice to the other of the time and place of such appli-
cation, and said three persons shall forthwith proceed to deter-
mine said lump sum fair rental value and shall render their decison
in writing to Lessor and Lessee within one hundred fifty (150)
days after the notice date. A decision of any two of said
three persons, or the decision of one third person in the event
that either party hereto fails to appoint a third
person as herein provided, shall be conclusive upon the parties
as to said lump sum fair rental value. Each party shall pay
the expenses of the person appointed by it; the expenses of
the third person shall be borne equally between Lessor and
Lessee. Within sixty (60) days after determination of said
lump sum fair rental value by the parties or by said person
or persons, as the case may be, Lessor shall either exercise
it right to terminate this lease as to said property so
described by payment of said lump sum fair rental to Lessee or
shall elect not to terminate this lease as to said property so
described and shall give written notice thereof to Lessee,

15.

provided, however, that the failure of Lessor to pay said lump sum fair rental to Lessee within said sixty (60) day period shall be conclusively deemed to constitute an election by Lessor not to terminate this lease under the provisions of this paragraph 12 as to said property so described.  If Lessor shall so elect to terminate this lease as to said property so described, this lease and all rights of Lessee hereunder shall as to said property so described cease and terminate upon payment of said lump sum fair rental to Lessee, as aforesaid, but Lessee shall nevertheless duly perform all duties and obligations under this lease with respect to said property so described relating to an event occurring or circumstance existing prior to such termination, and, upon demand by Lessor, Lessee shall make, execute, acknowledge and deliver to Lessor a deed in form satisfactory to Lessor conveying unto Lessor all right, title and interest herein conveyed to Lessee in and to said property so described.  In no event shall said lump sum fair rental value, determined in the manner hereinabove set forth in this paragraph 12, exceed as to all or any portion of the leased premises the sum of Forty Three Thousand Dollars ($43,000.00) per acre, said sum being the basis on which the initial rental specified in subparagraph 2(a) hereof has been computed.

13.  <u>Assignment - Successors and Assigns</u>.

(a)  <u>Voluntary Assignment</u>.

Lessee agrees not to sublet the whole or any part of the leased premises or to sell, assign or transfer this lease or any part or portion of the term hereby created or any interest therein or to permit the use of the leased premises except for Lessee's own purposes without having first obtained the consent in writing of Lessor, which consent Lessor agrees, subject to the provisions of this paragraph 13, shall not be unreasonably withheld, and in case any such consent is given no subsequent similar transaction shall be entered into by Lessee without again obtaining the written consent of Lessor thereto, provided, however, that Lessee

16.

may, without obtaining the consent of Lessor, (i) assign or transfer
this lease to any corporation which succeeds to all or substantially
all the business of Lessee, or (ii) sublet, assign or transfer the
whole or any part of the leased premises to any wholly owned sub-
sidiary of Lessee, but in such latter event Lessee as the parent
corporation shall continue fully obligated for timely performance
of all the terms, covenants, agreements and conditions of Lessee
herein contained.  Lessee understands and agrees that Lessor will
under no circumstances consent or be obligated to consent (A) to
the subletting of all or any part of the leased premises to any
sublessee, or to the sale, assignment or transfer of this lease or
any part or portion of the term hereby created or any interest
therein to any person, whose principal or primary use of the leased
premises will in Lessor's judgment be for the purpose of operating
or maintaining professional, administrative, business or other
offices thereon except in connection with and in support of the
conduct on the leased premises of research, development, light
manufacturing or warehousing not prohibited by the provisions of
paragraph 3 hereof, or (B) to the subletting of all or any part of
the leased premises or to the sale, assignment or transfer of this
lease or any part or portion of the term hereby created or any
interest therein (other than in connection with the financing of
construction of improvements on the leased premises) (1) unless
Lessee has first constructed improvements of substantial nature on
the leased premises or upon that portion thereof which Lessee pro-
poses to sublet or upon that portion thereof which is the subject
of such proposed sale, assignment or transfer, as the case may be,
or (2) unless Lessee has notified Lessor under the provisions of
paragraph 12 hereof that the leased premises or a portion thereof
not less than one acre in area are not required for use and occu-
pancy by Lessee, and Lessor has failed to exercise its right to
terminate this lease as to the leased premises or the portion
thereof specified in such notice by Lessee, as the case may be,

17.

in the manner set forth in said paragraph 12, and, in addition, has failed within one hundred twenty (120) days after such notice by Lessee to notify Lessee that the portion of the leased premises described in such notice by Lessee is not in Lessor's judgment susceptible of use independently of the leased premises, under then existing circumstances, for a purpose authorized by paragraph 3 hereof.

(b)    <u>Involuntary Assignment</u>.

(i)   Neither this lease nor the leasehold estate of Lessee nor any interest of Lessee hereunder in the leased premises or any buildings or improvements thereon shall be subject to involuntary assignment, transfer or sale or to assignment, transfer or sale by operation of law in any manner whatsoever, and any such attempted involuntary assignment, transfer or sale shall be void and of no effect.

(ii)   Without limiting the generality of the provisions of the preceding subparagraph (i), Lessee covenants and agrees that in the event any proceedings under the Bankruptcy Act or any amendment thereto be commenced by or against Lessee, and, if against Lessee, said proceedings shall not be dismissed before either an adjudication in bankruptcy or the confirmation of a composition, arrangement or plan of reorganization, or in the event Lessee be adjudged insolvent or make an assignment for the benefit of its creditors, or if a writ of attachment or execution be levied on the leasehold estate hereby created and be not released or satisfied within forty-five (45) days thereafter, or if a receiver be appointed in any proceeding or action to which Lessee is a party, with authority to take possession or control of the leased premises or the business conducted thereon by Lessee, and such receiver be not discharged within a period of forty-five (45) days after his appointment, any such event or any involuntary assignment prohibited by the provisions of the preceding subparagraph (i) shall be deemed to constitute a breach of this lease by

Lessee and shall, at the election of Lessor, but not otherwise, terminate this lease and also all rights of Lessee under this lease and in and to the leased premises and also all rights of any and all persons claiming under Lessee. Lessor shall not be required to give notice of its election to terminate or otherwise take any action to indicate its election in the event of an adjudication in bankruptcy. In the event of any other breach under this subparagraph (ii), Lessor shall promptly notify Lessee in writing if it elects to terminate.

      (c) <u>Successors and Assigns</u>.

Subject to the foregoing provisions of this paragraph 13, this lease shall be binding upon and shall inure to the benefit of and shall apply to the respective successors and assigns of Lessor and Lessee, and all references in this lease to "Lessee" shall be deemed to refer to and include successors and assigns of Lessee without specific mention of such successors or assigns.

      14. <u>Performance by Lessor</u>.

In the event that Lessee shall fail or neglect to do or perform any act or thing herein provided by it to be done or performed and such failure shall continue for a period of thirty (30) days after written notice from Lessor specifying the nature of the act or thing to be done or performed, then Lessor may, but shall not be required to, do or perform or cause to be done or performed such act or thing (entering upon the leased premises for such purposes, if Lessor shall so elect), and Lessor shall not be or be held liable or in any way responsible for any loss, inconvenience, annoyance or damage resulting to Lessee on account thereof, and Lessee shall repay to Lessor upon demand the entire cost and expense thereof, including compensation to the agents and servants of Lessor. Any act or thing done by Lessor pursuant to the provisions of this paragraph shall not be or be construed as a waiver of any such default by Lessee, or as a waiver of any term, covenant, agreement or condition herein contained or of the performance thereof. All amounts payable by Lessee to Lessor under any of the provisions of this lease, if not paid when the same become due as in this lease provided, shall bear interest from the date the same become due until paid at the rate of six per cent (6%) per annum, compounded annually.

15.  <u>Waiver</u>.

Lessee and Lessor further covenant and agree that if either party fails or neglects for any reason to take advantage of any of the terms hereof providing for the termination of this lease or for the termination or forfeiture of the estate hereby demised, or if either party, having the right to declare this lease terminated or the estate hereby demised terminated or forfeited, shall fail so to do, any such failure or neglect of either party shall not be or be deemed or be construed to be a waiver of any cause for the termination of this lease or for the termination or forfeiture of the estate hereby demised subsequently arising, or as a waiver of any of the terms, covenants, agreements or conditions of this lease or of the performance thereof.  None of the terms, covenants, agreements or conditions of this lease can be waived except by the written consent of waiving party.

16.  <u>Termination for a Default</u>.

In the event that Lessee shall fail or neglect to observe, keep or perform any of the terms, covenants, agreements or conditions herein contained on its part to be observed, kept or performed and such default shall continue for a period of one hundred twenty (120) days after written notice from Lessor setting forth the nature of Lessee's default, then and in any such event, Lessor shall have the right at its option, upon written notice to Lessee, forthwith to terminate this lease and all rights of Lessee hereunder shall thereupon cease, and Lessor without further notice to Lessee shall have the right immediately to enter into and upon the leased premises and take possession thereof with or without process of law and to remove all personal property from the leased premises and all persons occupying the leased premises and to use all necessary force therefor and in all respects to take the actual, full and exclusive possession of the leased premises and every part thereof as of Lessor's original estate, without incurring any liability to Lessee or to any persons occupying or using the leased

premises for any damage caused or sustained by reason of such entry upon the leased premises or such removal of such persons or property therefrom; and Lessee hereby covenants and agrees to indemnify and save harmless Lessor from all cost, loss or damage whatsoever arising or occasioned thereby.

17.  Inspection of Premises.

Lessor shall be entitled, at all reasonable times, to go upon and into the leased premises for the purpose of (a) inspecting the same, (b) inspecting the performance by Lessee of the terms, covenants, agreements and conditions of this lease, (c) posting and keeping posted thereon notices of non-responsibility for any construction, alteration or repair thereof, as required or permitted by any law or ordinance, or (d) during the last two (2) years of the term hereof exhibiting the leased premises to prospective lessees thereof.  Lessor and any such prospective lessee shall be represented by persons having necessary security clearance to meet governmental regulations if then applicable to the operations of Lessee.

18.  Delivery of Possession of Premises.

Lessor agrees to deliver possession of the leased premises to Lessee upon delivery of this lease by Lessor to Lessee, and, if the leased premises are at such date occupied by any person, whether under claim of right emanating from Lessor, or otherwise, Lessor shall at its sole cost and expense remove any such person from the leased premises.

19.  Covenants of Parties.

(a)  Lessor covenants and agrees to keep and perform all the terms, covenants, agreements and conditions hereof on its part to be kept and performed, and that Lessee, paying the rent in the amounts, at the times and in the manner herein provided and keeping and performing all the terms, covenants, agreements and conditions hereof on its part to be kept and performed, may, subject to the terms and conditions hereof, have and hold the

21.

property hereby leased, for the term hereof, without let or hindrance by Lessor.

(b)  Lessee covenants and agrees to pay the rent and all other sums required to be paid by Lessee hereunder in the amounts, at the times and in the manner herein provided and to keep and perform all the terms, covenants, agreements and conditions hereof on its part to be kept and performed, and, at the expiration or sooner termination of this lease, peaceably and quietly to quit and surrender to Lessor the property hereby leased in good order and condition subject to the other provisions of this lease.  The performance of each and every covenant and agreement of Lessee hereunder shall be a condition for non-performance of which this lease may be terminated as in this lease provided.

20.  <u>Rights Reserved by Lessor</u>.

Lessor expressly reserves all rights in and with respect to the land hereby leased not inconsistent with Lessee's use of the leased premises as in this lease provided, including (without in anywise limiting the generality of the foregoing) the right of Lessor to enter and to permit the City of Palo Alto, the County of Santa Clara, other governmental bodies, public utilities and other persons to enter upon the leased premises for the purposes of installing, using, operating, maintaining, renewing, relocating and replacing such underground water, oil, gas, steam, storm sewer, sanitary sewer and other pipe lines and telephone, electric, power and other lines and conduits as Lessor may deem desirable in connection with the development or use of any other property in the neighborhood of the land hereby leased, whether owned by Lessor or not, all of which pipe lines, lines and conduits shall be buried to a sufficient depth so as not to interfere with the use or stability of said building or any other building or improvement on the land hereby leased, and the sole and exclusive right to enter upon the leased premises and mine or otherwise produce or extract by any means whatsoever, whether by slant drilling or otherwise, oil,

22.

gas, hydrocarbons and other minerals (of whatsoever character) in or under or from the land hereby leased, such mining, production or extraction to be for the sole benefit of Lessor without obligation to pay Lessee for any or all of the substances so mined, produced or extracted; provided, however, that none of the operations for such mining, production or extraction shall be conducted from the surface of the land hereby leased, but only at such depth beneath such land surface as not to interfere with the use or stability of said building or any other buildings or improvements on the land hereby leased or Lessee's use of the leased premises. Lessor shall indemnify and reimburse Lessee for any loss or damage actually incurred or sustained by Lessee as a result of or arising out of the exercise by Lessor, the City of Palo Alto, the County of Santa Clara, any other governmental body, any public utility or any other person of any of the rights reserved in this paragraph, but, unless Lessee shall actually incur or sustain any such loss or damage, Lessee shall not be entitled to any compensation whatsoever by reason of the exercise of any such right.

21. Attorney's Fees.

If any action at law or in equity shall be brought to recover any rent under this lease, or for or on account of any breach of or to enforce or interpret any of the terms, covenants, agreements or conditions of this lease, or for the recovery of the possession of the leased premises, the prevailing party shall be entitled to recover from the other party as a part of prevailing party's costs a reasonable attorney's fee, the amount of which shall be fixed by the court and shall be made a part of any judgment rendered.

22. Ownership of Buildings.

All buildings and improvements hereafter situated upon the land hereby leased shall be and become a part of the leased premises, and Lessee shall have only a leasehold interest therein, subject to all the terms, covenants, agreements and conditions of

23.

this lease, provided, however, that whenever Lessee shall repair, reconstruct, alter or rebuild or restore any building or improvement, as in this lease required or permitted, the material and salvage therefrom may be used or sold by Lessee without payment therefor to Lessor.

23. Lessee's Fixtures.

Lessee, at any time when Lessee is not in default hereunder, may, and upon termination of this lease if so requested in writing by Lessor shall, remove from the leased premises any fixtures or equipment installed therein by Lessee, whether or not such fixtures or equipment are fastened to the buildings or other improvements located upon the leased premises and regardless of the manner in which they are so fastened, provided, however, that under no circumstances shall any fixture or equipment be removed without Lessor's written consent if (a) such fixture or equipment is used in the operation of any building or improvement upon the leased premises, or (b) the removal thereof would result in impairing the structural strength of any building or improvement upon the leased premises. Lessee shall fully repair any damage occasioned by the removal of any such fixtures or equipment and shall leave the buildings and improvements in a good, clean and neat condition.

24. Time of the Essence.

Time is hereby expressly declared to be of the essence of this lease and of each and every term, covenant, agreement, condition and provision hereof.

25. Paragraph Headings.

Paragraph headings in this lease are for convenience only and are not to be construed as a part of this lease or in any way limiting or amplifying the provisions hereof.

26. Remedies Cumulative.

All remedies hereinbefore and hereafter conferred upon Lessor shall be deemed cumulative and no one exclusive of the other, or any other remedy conferred by law.

24.

27.  Lease Construed as a Whole.

The language in all parts of this lease shall in all cases be construed as a whole according to its fair meaning and not strictly for nor against either Lessor or Lessee.

28.  Meaning of Terms.

Whenever the context so requires, the neuter gender shall include the masculine and the feminine, and the singular number shall include the plural.

29.  Notices.

All notices, demands or other writings in this lease provided to be given or made or sent, or which may be given or made or sent, by either party hereto to the other, shall be deemed to have been fully given or made or sent when made in writing and deposited in the United States mail, registered or certified, postage prepaid, and addressed as follows:

```
To Lessor:  Manager of Real Estate
            Stanford University
            Stanford, California 94305

To Lessee:  Xerox Corporation
            Facilities and Administrative Services
            Highridge Park
            Stamford, Connecticut  06904  Attn: H. Theodore
                                                       Green
```

The address to which any notice, demand or other writing may be given or made or sent to any party may be changed upon written notice given by such party as above provided.

IN WITNESS WHEREOF, the parties hereto have executed this instrument in duplicate by proper persons thereunto duly authorized as of the day and year first hereinabove written.

Approved as to form:

_____

Approved as to content:

_____

(SEAL)

THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JUNIOR UNIVERSITY

By _Robert R. Augsburger_      [APPROVED]
   Robert R. Augsburger
Vice President for Business and Finance

                    LESSOR

XEROX CORPORATION

By _Wm. McCandell_
Title    President

By _L. C. Smith_
Title _Assistant Secretary_

(SEAL)                    25.                    LESSEE

STATE OF CALIFORNIA )
                    ) ss.
County of Santa Clara )

Cassius L. Kirk, Jr.

On this 7ᵗʰ day of *December*, 19 72, before me, ~~Daryl Craig Dawson~~, a Notary Public of the State of  California, duly commissioned and sworn, with my principal office in the County of Santa Clara, personally appeared  ~~Robert R. Augsburger~~  , known to me to be the VICE PRESIDENT FOR BUSINESS AND FINANCE   of the body having corporate powers that executed the within instrument, and known to me to be the person who executed the within instrument on behalf of the body having corporate powers therein named, and acknowledged to me that such body having corporate powers executed the same pursuant to its by-laws or a resolution of its Board of Trust

Witness my hand and official seal.

CASSIUS L. KIRK, JR.
NOTARY PUBLIC — CALIFORNIA
PRINCIPAL OFFICE IN
SANTA CLARA COUNTY
My Commission Expires July 26, 1976

*Cassius J. Kirk*


STATE OF  CONNECTICUT       )
                            ) ss.
County of  FAIRFIELD        )

On        September 29, 1972        before me, the undersigned, a Notary Public in and for said State, personally appeared       ARCHIE R. MC CARDELL      , known to me to be the       President, and G. EMMETT SMITH      , known to me to be        Assistant    Secretary of the corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument on behalf of the corporation therein named, and acknowledged to me that such corporation executed the within Instrument pursuant to its by-laws or a resolution of its board of directors.

Witness my hand and official seal.

*Barbara Ann Kenney*
Signature

*Barbara Ann Kenney*
Name (Typed or Printed)

My commission expires March 31, 1977

DESCRIPTION
OF
**14. 174± ACRE PARCEL OF LAND - PORTION OF STANFORD INDUSTRIAL PARK
PALO ALTO, CALIFORNIA**

All that certain real property situate in the City of Palo Alto, County of Santa Clara,
State of California, being more particularly described as follows:

PARCEL A as shown on the Parcel Map recorded December 4, 1972
in Book 313 of Maps, page 15, Santa Clara County Records

CONTAINING 14. 174 acres of land, more or less.

RESERVING THEREFROM a 5.00-foot wide waterline easement contiguous with
and lying Westerly from the most Easterly line of Parcel 3, said Easterly line
also being the Westerly line of Hillview Avenue and more particularly described
in Volume 7952 of Official Records of Santa Clara County at page 197.

TOGETHER WITH an easement 10 feet in width for storm drainage purposes, through
the adjoining 16. 339± acre parcel of land leased by the Board of Trustees of the Leland
Stanford Junior University to Smith, Kline and French, the centerline of which is more
particularly described as follows:

BEGINNING at a point on the Northerly line of the hereinabove described 14. 174-
acre parcel, said point bearing North 84°30'00" West 328. 37 feet from the inter-
section of the courses North 28°20'00" West 180. 00 feet and North 84°30'00" West
492. 59 feet; thence from said point of beginning leaving the Northerly line of the
hereinabove described parcel North 21°15'00" East 225. 62 feet; North 72°10'00"
East 340. 00 feet and South 87°30'00" East 82. 00 feet to a point on the Northeasterly
line of said parcel of land leased to Smith, Kline and French, said point also being
on the Southerly line of Parcel B of Foothill Expressway Unit No. 1, as shown on
the certain Record of Survey filed in the Office of the Recorder of Santa Clara
County in Book 163 of Maps at pages 48, 49, 50 and 51, and also being the terminus
of said easement.

TOGETHER WITH a 15-foot wide easement forsanitary sewer and storm drainage
purposes through the adjoining 16. 339± acre parcel of land leased by the Board of
Trusteees of the Leland Stanford Junior University to Smith, Kline & French, the
centerline of which is more particularly described as follows:

BEGINNING at a point on the Northerly line of the hereinabove described 14. 174-
acre parcel, said point bearing North 66°53'15" West 255. 12 feet from the inter-
section of the courses North 84°30'00" West 492. 59 feet and North 66°53'15" West
386. 98 feet; thence from said point of beginning leaving the Northerly line of the
hereinabove described parcel North 18°00'00" West 115. 16 feet; North 42°00'00" West
123. 78 feet and North 3°27'07" East 270. 00 feet to a point on the Northerly line of

-1-

EXHIBIT A
Page 1

### DESCRIPTION
### OF
### 14. 174± ACRE PARCEL OF LAND - PORTION OF STANFORD INDUSTRIAL PARK
### PALO ALTO, CALIFORNIA

#### Continued

said parcel of land leased to Smith, Kline & French, said point also being on the Southerly line of Parcel B of Foothill Expressway Unit No. 1 as shown on the certain Record of Survey filed in the Office of the Recorder of Santa Clara County in Book 163 of Maps at pages 48, 49, 50 and 51, and also being the terminus of said easement.

TOGETHER WITH a 10-foot wide easement through the adjoining 16. 339± acre parcel of land leased by the Board of Trustees of the Leland Stanford Junior University to Smith, Kline & French for storm drainage purposes, the Northerly line of which is more particularly described as follows:

COMMENCING at a point on the Southerly line of Parcel B, Foothill Expressway Unit No. 1, as shown on that certain Record of Survey filed in the Office of the Recorder of Santa Clara County in Book 163 of Maps at pages 48, 49, 50 and 51, said point also being the most Northeasterly corner of that certain 13. 479 acre parcel of land entitled, "Parcel 1", as shown on that certain Parcel Map filed for record May 13, 1970, Official Records of Santa Clara County in Book 268 of Parcel Maps, at page 7; thence from said point of commencement along said Southerly line of said Parcel B of Foothill Expressway Unit No. 1 and leaving the said Northeasterly corner of Parcel 1 South 84°32'53" East 545. 00 feet; thence along the arc of a tangent curve to the right, having a radius of 4. 935. 00 feet, through a central angle of 2°19"19", a distance of 200. 00 feet to the true point of beginning of the Northerly line of the easement to be described;

THENCE FROM SAID TRUE POINT OF BEGINNING continuing along the Southerly line of the hereinabove described parcel B, Foothill Expressway Unit No. 1, along the arc of a curve, having a radius of 4, 935. 00 feet, through a central angle of 3°53'22", an arc distance of 335. 00 feet to the terminus of the Northerly line of said easement, at which point a radial line bears South 11°39'48" West.

SUBJECT HOWEVER, to that certain Declaration of Protective Covenants recorded on _____, 1972, in Santa Clara County, Office of the Recorder, at page _____, book ____ of the official records thereof.

-2-



**SURVEYOR'S CERTIFICATE**

This map was prepared by me or under my direction and is based on record data in conformance with the requirements of the Subdivision Map Act at the request of Xerox Corporation.

I hereby certify that it conforms to the approved tentative map and the conditions of approval thereof; that all provisions of applicable state law and local ordinances have been complied with.

Date: 11/8/72

STANLEY A. KANGAS, RCE 13716

**CITY ENGINEER'S CERTIFICATE**

This map has been examined this 30th day of November 1972, for conformance with the requirements of Section 11576 of the Subdivision Map Act.

**RECORDER'S CERTIFICATE**

File No. 4405411  Fee $5.00
Filed this 4th day of December, 1972, at 12th PM in Book 313 of Parcel Maps at Page 15, at the request of Brian Kangas Foulk & Associates

Geo. A. Payne, Santa County Recorder

Deputy

**BASIS OF BEARINGS · NOTES · LEGEND**

The bearing, S13°27'55"E, of the Centerline of Hillview Avenue (future) as said Centerline is shown on that certain Record of Survey entitled "Record of Survey, being portions of the centerline of Junipero Serra Blvd., West Fremont Ave., Arastradero Road and Hillview Ave (future)" as said map was recorded in the office of the Recorder of Santa Clara County in book 156 of Maps at Page 46, was taken as the basis of bearings shown on this map.

All distances and dimensions are shown in feet and decimals thereof.
The blue border indicates the boundary of the land subdivided by this map.

● indicates Street Monument
○ ... Angle Point in Boundary

**DIRECTOR OF PLANNING CERTIFICATE**

This map has been examined this 29th day of November 1972, for conformance with the approved tentative map

Director of Planning

# PARCEL MAP

BEING A RESUBDIVISION OF PARCELS 2 AND 3 OF PARCEL MAP RECORDED IN BOOK 260 OF PARCEL MAPS AT PAGE 7, RECORDS OF SANTA CLARA COUNTY

## CITY OF PALO ALTO
### SANTA CLARA COUNTY , CALIFORNIA

SCALE 1" = 100            SEPT., 1972

**BRIAN · KANGAS · FOULK & ASSOCIATES**
CONSULTING ENGINEERS · PLANNERS · SURVEYORS
999 BREA AVENUE  REDWOOD CITY  CALIFORNIA